UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIIL SHEIKO,<br><br>        Petitioner,<br><br>    v.<br><br>THOMAS GILES, et al.,<br><br>        Respondents. | NO. EDCV 19-1859-JFW (KS)<br><br>ORDER: DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; DISMISSING PETITION WITHOUT PREJUDICE |

      On September 26, 2019, Daniil Sheiko ("Petitioner"), a citizen of Ukraine who is currently in the custody of United States Immigration and Customs Enforcement and proceeding with counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). (Dkt. No. 1.) The Petition presents one ground for habeas relief: "The Petitioner will be removed without having all access to appellate review . . . by [virtue of] the agency denying the emergency stay of removal but not the underlying petition [to reopen the final removal order]." (Petition at 6.) On October 11, 2019, Petitioner filed a Motion for Emergency Temporary Restraining Order (the "Motion"), in which Petitioner seeks a temporary restraining order ("TRO") and preliminary injunction staying his imminent removal from the United States while the Board of Immigration Appeals ("BIA") adjudicates his

motion to reopen immigration proceedings. (Dkt. No. 8.) Thus, in effect, the Motion seeks the same relief as the Petition—a stay of removal pending the BIA's adjudication of his motion to reopen immigration proceedings.

## PETITIONER'S IMMIGRATION PROCEEDINGS

Petitioner initially sought admission into the United States as a tourist and subsequently sought asylum, based on his fear of return to Ukraine based on his membership in a particular social group, *i.e.*, persons with bisexual sexual orientation, and his political opinion. (Dkt. No. 14 at 1; Motion, Ex. E at 1.) On October 2, 2017, Petitioner's asylum claim was denied and an order of removal was entered against him. (Petition at 5; Motion at 2; Dkt. No. 14 at 1.) On October 30, 2017, Petitioner appealed the removal order to the BIA. (Petition at 6.) On May 4, 2018, while his appeal was pending in the BIA, Petitioner's husband, Raul Silos, filed an I-130 Petition for Alien Relative indicating that Petitioner is in the United States and wished to apply for adjustment of status to that of a lawful permanent residence. (*See* Motion, Ex. A; *see also* Motion at 9.) A little over two months later, on July 19, 2018, Petitioner's appeal to the BIA was summarily dismissed. (*Id.*; Motion, Ex. C.) On August 20, 2018, Petitioner appealed the BIA decision to the Ninth Circuit, arguing that asylum was wrongfully denied. (*Id.*) On June 27, 2019, the Ninth Circuit denied review of the BIA's dismissal. (Petition at 6; Motion, Ex. D.)

On July 12, 2019, just a few weeks after the Ninth Circuit's decision, the I-130 Petition for Alien Relative was granted, and Petitioner was instructed to submit a copy of the notice of approval with a Form I-485 Application to Register Permanent Residence or Adjust Status. (Motion, Ex. A; *see also* Motion at 9.) Instead, just over a month later, on August 23, 2019, Petitioner moved to reopen his BIA proceedings and to remand for purposes of adjustment of status. (Petition at 6; Motion, Ex. E.) He claimed that he was eligible for adjustment of status based on the approval of his Form I-130 Petition. (Motion, Ex. E.) Three days later, on August

26, 2019, Petitioner was taken into ICE custody. (Petition at 5.) Petitioner then filed an emergency motion to stay the enforcement of his removal order, pending the BIA's adjudication of the motion to reopen. (*See* Petition at 3.) On September 26, 2019, all of the following occurred: (1) the BIA denied the stay of removal on the grounds that it was unlikely that Petitioner's motion to reopen would be granted (Dkt. No. 14-1, Ex. A; *see* Petition at 3); (2) Petitioner filed the instant Petition; and (3) Petitioner filed an I-485 Application to Register Permanent Residence or Adjust Status (Motion, Ex. B).

## PROCEDURAL BACKGROUND

On October 1, 2019, the Court ordered Respondents to file a response to the Petition and further directed that "Respondent <u>SHALL NOT</u> remove Petitioner prior to the resolution of this action without providing reasonable notice to the Court." (Dkt. No. 4 at 2 ¶ 3 (emphasis in original).) On October 7, 2019, Respondents filed a Notice of Imminent Removal, stating that Petitioner's final removal order was issued more than two years ago, he would be subject to removal at any time from October 14, 2019 onward, and he would be removed accordingly. (Dkt. No. 6.) Respondents also stated that a district court lacks jurisdiction to stay enforcement of a final removal order. (*Id.* at 3 (citing 8 U.S.C. § 1252(g).)

The Court ordered Petitioner to respond to Respondents' Notice. (Dkt. No. 7.) Petitioner filed the instant Motion to enjoin his removal from the United States during the pendency of his immigration proceedings. (Dkt. No. 8.) On October 11, 2019, the Court granted a temporary TRO, ordering that Petitioner not be removed from the United States for ten days. (Dkt. No. 10.) On October 15, 2019, the Court ordered Respondents to show cause why a preliminary injunction should be issued. (Dkt. No. 11.) On October 16, 2019, Respondents filed a Response to the Court's Order to Show Cause, arguing for the denial of a TRO. (Dkt. Nos. 12, 14.) Petitioner's deadline for filing a reply was 24 hours from the time of Respondents' service of the Response. (*See* Dkt. No. 11.) Twenty-nine hours after

Respondents served the Response, Petitioner filed his Reply. (Dkt. No. 15.) Although the Court may decline to consider any document not filed within the deadline set by order, *see* Local Rule 7-12, in the interests of justice the Court has considered the arguments in Petitioner's Reply.

## THE MOTION

In the Motion, Petitioner argues that, although Section 1252(g) generally operates to strip district courts of jurisdiction over requests to stay the execution of a final removal order, the Suspension Clause of the United States Constitution, *see* U.S. CONST., art. I, § 9, cl. 2, confers jurisdiction and compels injunctive relief in this case. (*See* Motion at 6-8.) The Motion further argues that Petitioner will face irreparable harm if he is removed while the motion to reopen is pending because his removal will result in the abandonment of his adjustment of status application, which he cannot continue to pursue from abroad. (*Id.* at 8.)

## THE RESPONSE (Dkt. No. 14)

Respondents contend that Section 1252(g) clearly bars the Court from assuming subject matter jurisdiction to grant a stay of execution of a removal order, and the cases cited by Petitioner in support of jurisdiction based on the Suspension Clause are inapposite here. (Response at 4-11.)

Respondents further observe that Petitioner is unlikely to succeed on the merits of the Petition because his motion to reopen his removal proceedings with the BIA is unlikely to succeed. First, the motion was untimely filed, having been filed more than 90 days after the removal order became final. (*See* Dkt. No. 14 at 12); *see also* 8 U.S.C. § 1229a(c)(7)(C)(i). Second, Respondents contend that Petitioner has sought to adjust his status based on a marriage to a U.S. citizen during active exclusion or deportation proceedings, which is

statutorily prohibited unless either (a) the alien has resided outside the United States for a 2-year period beginning after the date of the marriage or (b) the alien establishes by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith and not for the purpose of procuring admission as an immigrant. (*Id.*) (citing 8 U.S.C. §§ 1154(g), 1255(e)(3)).  Third and finally, Respondents assert that, in the context of Petitioner's emergency application for a stay, the BIA has already examined Petitioner's motion to reopen and determined that it is not likely to be granted.  (Dkt. No. 14 at 11.)

Lastly, Respondents state that granting a preliminary injunction would harm the public interest by delaying the enforcement of a final removal order, and, in doing so, authorizing and facilitating the alien's continuing violation of U.S. law.  (Dkt. No. 14 at 14) (citing *Nken v. Holder*, 556 U.S. 418, 435-36 (2009)).

### THE REPLY (Dkt. No. 15)

In the Reply, Petitioner asserts that Respondents have mischaracterized the record to suggest that Petitioner engaged in a last-minute marriage for the primary purpose of avoiding deportation.  (*See* Reply at 3.)  To the contrary, Petitioner states that his delayed filing of both the motion to reopen and the I-485 Application was not the result of negligence but, rather, his—and his then counsel's—unfamiliarity with the law.  (Reply at 3.)  Further, Petitioner appears to concede that, although the motion to reopen may be untimely, it is not procedurally barred because Petitioner should be entitled to equitable tolling based on the errors of his counsel at the time in failing to file a motion to remand.  (Reply at 4.)  "[Petitioner] is not a noncitizen who slept on his rights and is making meritless attempts to remain in the court," he argues; rather, "Petitioner had the misfortune of hiring counsel who failed to take the appropriate steps to maximize his chances of legalizing."  (Reply at 4.)

Petitioner contends that the government is turning a blind eye to the harms committed by "unscrupulous" and "incompetent" attorneys, by moving at "breakneck speed to physically remove" aliens like Petitioner, instead of adjudicating their motions to reopen. (Reply at 5.) Accordingly, Petitioner characterizes the Petition as challenging a due process violation and not the government's authority to execute a final order of removal. (*See* Reply at 6-7.) On this basis, Petitioner analogizes the case to the Central District's decision in *Chhoeun v. Marin*, 306 F. Supp.3d 1147 (C.D. Cal. 2018), and states that the Court may exercise jurisdiction over the Petition without running afoul of Section 1252(g). (Reply at 6-7.)

In the alternative, Petitioner asserts that, under the circumstances of this case, the Suspension Clause precludes Section 1252(g) from stripping the Court of jurisdiction because, in the absence of habeas relief in the form of a stay of removal, Petitioner will be deprived of the opportunity to effectively litigate his motion to reopen. (Reply at 8-9.) "There is no substitute proceeding," Petitioner contends, "that allows the Petitioner to seek full administrative and judicial review of his motion to reopen." (Reply at 9.)

Finally, Petitioner asserts that he satisfies the prerequisites for preliminary injunctive relief. First, with respect to a likelihood of success on the merits, Petitioner suggests that he is likely to succeed in establishing a due process violation in connection with his deportation proceedings. Petitioner cites Ninth Circuit case law establishing that ineffective assistance of an attorney in connection with deportation proceedings is a due process violation that supports granting a motion to reopen those proceedings. (*See* Reply at 10-11) (citing *Lin v. Ashcroft*, 377 F.3d 1014 (9th Cir. 2004)). Petitioner further states that he is likely to succeed on his I-485 Application because the fact that his spouse's I-130 Petition was approved during the removal proceedings is considered "primary evidence" of a "bona fide marriage," thereby exempting him from the statutory prohibition on attempts to adjust status based on marriage to a U.S. citizen during active exclusion or deportation proceedings. (Reply at 12.) Finally, Petitioner asserts that deporting Petitioner prior to adjudicating his motion to reopen deprives

6

him of the procedural safeguards necessary to prevent the erroneous deprivation of his strong interest in staying with his husband and living and working in the United States (*see* Reply at 11-12) because his removal will render his I-485 Application abandoned and thereby deprive Petitioner of the ability "to benefit from [a] positive decision" by the BIA on the motion to reopen (*see* Reply at 13-14). Petitioner adds that the Government has provided no assurances that it would parole Petitioner into the United States if he obtained a positive decision from either the BIA or the Ninth Circuit. (Reply at 14.)

Lastly, Petitioner states: he would suffer irreparable harm in the form of a due process violation in the absence of preliminary injunctive relief; the balance of equities tip in his favor given the minimal hardship the Government would experience in delaying his removal relative to the effect it would have on Petitioner and his spouse; and the public interest in preventing wrongful deportations favors granting the injunction. (Reply at 14.)

## DISCUSSION

### I. Section 1252(g) Strips the Court of Jurisdiction

As acknowledged by both parties, the critical question is whether the Court has jurisdiction to consider Petitioner's challenge to his imminent removal given the jurisdiction-stripping provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 and the REAL ID Act of 2005. Among those provisions is 8 U.S.C. § 1252(g), which states "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the [Secretary of Homeland Security] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." Respondent contends that the Petition, and, ergo, the Motion, present the precise claim that is rendered unreviewable by 8 U.S.C. § 1252(g), because it seeks to enjoin the government's execution of a removal order against Petitioner. (*See* Motion at 4-5): *see also Balogun v.*

*Sessions*, 330 F. Supp. 3d 1211, 1212, 1215-16 (C.D. Cal. 2018) (petition to stay execution of the petitioner's final removal order pending adjudication of his U-visa application is one of those actions that falls categorically under the jurisdiction stripping provision of Section 1252(g)); *Xiaoyuan Ma v. Holder*, 860 F. Supp. 2d 1048, 1059 (N.D. Cal. 2012) (concluding that the relief the petitioner sought—a stay of the execution of the BIA's removal order pending adjudication of her motion to reopen due to ineffective assistance of counsel—fell within the ambit of Section 1252(g) because both the relief sought and the claim upon which it was based were connected "directly and immediately" to a "decision or action" by the Attorney General to execute a removal order).

Petitioner responds that the Petition and the Motion fall outside the ambit of Section 1252(g) because it is challenging a due process violation—namely, counsel's alleged ineffectiveness in connection with the deportation proceedings—and not the government's authority to execute a final order of removal. (*See* Reply at 6-7.) For support, Petitioner analogizes the case to the Central District's decision in *Chhoeun v. Marin*, 306 F. Supp.3d 1147 (C.D. Cal. 2018). (*Id.*) In *Chhoeun*, the petitioners, most of whom were Cambodian citizens who had come to the United States as children in the 1970s, became subject to final removal orders many years, and often more than a decade, prior to their detention. 306 F.Supp.3d at 1150. The petitioners were not deported at the time the removal orders became administratively final because Cambodia refused to accept their repatriation at the time, and ICE determined that the petitioners were not flight risks and did not pose a danger to society. *Id.* However, in October 2017, ICE commenced a series of raids, detained petitioners, and planned to deport them to Cambodia "at any time." *Id.* at 1150-51. Because their removal orders had laid dormant for so many years, the petitioners sought a stay of the execution of their removal orders so that they could challenge the validity of their removal orders based on intervening Supreme Court precedent. *See id.* at 1151. In that case, as here, the Government contended that Section 1252(g), among other statutory provisions, stripped the court of jurisdiction to consider the petitioners' request for a stay. *See id.* at 1157-58. Citing a series

8

of Ninth Circuit cases, including *Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998), the Central District concluded that the petitioners were not seeking judicial review of the merits of the decades-old removal proceedings, but, rather, were seeking a stay so that they could enforce their constitutional rights to due process in the context of those proceedings through a motion to reopen, and, therefore, their action fell outside the ambit of Section 1252(g). *Chhoeun*, 306 F. Supp.3d at 1159.

Having reviewed Petitioner's motion to reopen (Motion, Ex. E), the Court finds that Petitioner's analogy to *Chhoeun* is unfounded. Nowhere in the motion to reopen does Petitioner refer to any deficiencies of his prior counsel nor allege any due process violations in connection with his prior immigration proceedings. (*See generally* Motion, Ex. E.) To the contrary, the sole basis for the motion to reopen is that Petitioner can establish *prima facie* eligibility for adjustment of status based on the approval of the I-130 Petition. (*Id.*) Accordingly, the Court finds that Petitioner seeks a stay to litigate the merits of his removal order through a motion to reopen rather than to enforce his constitutional right to due process. Therefore, the Court finds that Section 1252(g) applies to strip the Court of subject matter jurisdiction in this matter.

## II. The Suspension Clause Does Not Vest the Court with Jurisdiction

Petitioner nevertheless asks the Court to exercise jurisdiction over this matter pursuant to the Suspension Clause of the Constitution. (Motion at 6-8; Reply at 8-9.) For support, the Motion relies heavily on the Ninth Circuit's decision in *Thuraissigiam v. U.S. Dep't of Homeland Sec.*, 917 F.3d 1097 (9th Cir. 2019), *cert. granted*, No. 19-161, 2019 WL 5281289 (Oct. 18, 2019), and the decision of the Western District of Washington in *Diaz-Amezcua v. Barr*, __ F. Supp. 3d __, 2019 WL 4261178, at *2-*3 (W.D. Wash. Sept. 9, 2019). (Motion at 6-8.)

9

The Suspension Clause states "The privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST., art. I, § 9, cl. 2. The "privilege of habeas corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Thuraissigiam*, 917 F.3d at 1107 (quoting *Boumediene v. Bush*, 553 U.S. 723, 779 (2008)). A Suspension Clause challenge is evaluated under a two-step framework: "at step one, we examine whether the Suspension Clause applies to the petitioner; and, if so, at step two, we examine whether the substitute procedure provides review that satisfies the Clause." *Id.* (citing *Boumediene*, 553 U.S. at 764, 779). The parties do not dispute that the Suspension Clause applies to Petitioner, a noncitizen seeking a judicial check on the executive power to restrain his liberty. Instead, the crux of the dispute is at step two: whether Petitioner has access to judicial review or an adequate substitute. *See also Thuraissigiam*, 917 F.3d at 1108 ("the Suspension Clause entitles a petitioner 'to a meaningful opportunity to demonstrate he is being held to the erroneous application or interpretation of relevant law'") (quoting *Boumediene*, 553 U.S. at 779).

Petitioner seeks to analogize this case to *Diaz-Amezcua*. (*See* Motion at 7.) However, in *Diaz-Amezcua*, the court found that if the execution of the removal order was not stayed, the petitioner—who was a native of Mexico and who had filed a motion to reopen removal proceedings based on a change of country conditions that jeopardized Petitioner's personal safety—would be rendered unable to litigate his pending motion to reopen because of the serious threat to his personal security in Mexico. *See Diaz-Amezcua*, 2019 WL 4261178, at *3. Under these circumstances, the court explained, the petitioner would not have an adequate alternative to judicial review if he was removed while the motion to reopen was pending, and, therefore the Suspension Clause applied to preclude the operation of Section 1252(g).

Similarly, in *Compere v. Nielsen*, 358 F. Supp. 3d 170, 173 (D.N.H. 2019), the District of New Hampshire found that it had jurisdiction under the Suspension Clause to grant a habeas

petition seeking a stay of the petitioner's removal order because the petitioner had established that, if he was removed while his motion to reopen was still pending, he would be unable to litigate that motion based on conditions in his native country (Haiti) that threatened his personal safety. 358 F. Supp.3d at 181. Again, under those circumstances, the court concluded that habeas corpus was "the only means available" to the petitioner to protect his right to challenge the removal order. *Id.*

In contrast, neither the Motion nor the Reply asserts that Petitioner will be unable to litigate his motion to reopen from Ukraine. Petitioner alleges instead that, if he is removed while his motion to reopen is pending, the motion to reopen will likely be denied because, by virtue of his removal, his I-485 Application—the sole basis for the motion to reopen—will be deemed abandoned. Petitioner's allegations that his motion to reopen is likely to be denied on its merits following his removal is meaningfully different from the allegations in *Diaz-Amezcua* and *Compere* that the petitioner will be physically unable to litigate the motion to reopen following his removal. Indeed, the Reply makes no mention of a country conditions that would preclude Petitioner's ability to participate in the litigation through his lawyer and husband here in the United States, and Petitioner certainly has not alleged a personal security threat comparable to the ones alleged in *Thuraissigiam*, *Diaz-Amezcua*, or *Compere*. Admittedly, litigating the motion from another country is likely to be more difficult than litigating it from the United States, but this difficulty alone does not render Petitioner without access to a meaningful opportunity to obtain review of the removal order, including review of the procedural concerns that Petitioner raised in the Petition, the Motion, and the Reply.

\\
\\
\\
\\
\\
\\

For the foregoing reasons, the Court concludes that Section 1252(g) strips the Court of subject matter jurisdiction to consider the Petition and grant the relief requested, and, further, the Suspension Clause of the Constitution does not vest the Court with jurisdiction despite Section 1252(g). Accordingly, the Court lacks jurisdiction to consider the Petition and the Motion, and IT IS HEREBY ORDERED that the Motion is DENIED and the Petition is DISMISSED without prejudice.

DATED: October 18, 2019

JOHN F. WALTER
UNITED STATES DISTRICT JUDGE

Presented by:

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE